IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TEXARKANA DIVISION

| | | |
|---|---|---|
| AARON LUCAS | § | |
| VS. | § | CIVIL ACTION NO. 5:21cv9-RWS-JBB |
| DIRECTOR, TDCJ-CID | § | |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Petitioner Aaron Lucas, proceeding *pro se*, filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636 for findings of fact, conclusions of law, and recommendations for the disposition of the case.

Prior Proceedings

In 2017, following a jury trial in the 5th District Court of Bowie County, Texas, petitioner was convicted of aggravated sexual assault and aggravated kidnapping. He was sentenced to life imprisonment. The aggravated kidnapping conviction was affirmed by the Texas Court of Appeals for the Sixth District. *Lucas v. State*, No. 06-17-0095-CR, 2018 WL 1569518 (Tex.App.-Texarkana Apr. 2, 2018). The conviction for aggravated sexual assault was also affirmed. *Lucas v. State*, No. 06-17-00096-CR, 2018 WL 1569854 (Tex.App.-Texarkana Apr. 2, 2018). The Texas Court of Criminal Appeals refused a petition for discretionary review. *Lucas v. State*, PD-0460-18 (Tex. Crim. App. 2018).

Petitioner subsequently filed state applications for writ of habeas corpus concerning each conviction that were dismissed for failure to comply with Texas Rule of Appellate Procedure 73.1. A second set of state applications was dismissed for failing to comply with Texas Rule of Appellate Procedure 73.2. However, after petitioner filed a motion for reconsideration, the Court of Criminal Appeals changed its rulings to denials without written order. Subsequent state applications regarding each conviction were also denied without written order.

Grounds for Review

Petitioner asserts the following grounds for review: (1) the trial court erred by: (a) granting a continuance in violation of the Interstate Agreement on Detainers ("IADA"); (b) permitting inadmissible evidence to be offered; (c) allowing an unverified and suggestive lineup array into evidence; (d) allowing the convictions to stand where the prosecution failed to meet the burden of proof regarding each of the offenses; (e) allowing the prosecutor to express personal opinions about petitioner's guilt and quote from the Bible; and (f) denying him his right to a speedy trial; (2) he was denied effective assistance of counsel during the pretrial phase of the proceeding with respect to a plea offer; (3) he was denied effective assistance at trial because counsel: (a) failed to call exculpatory witnesses to verify his alibi and (b) failed to properly investigate; (4) he received ineffective assistance of counsel on appeal because appellate counsel failed to investigate a suggestive lineup array and evidence regarding an identical twin; and (5) there was insufficient evidence to support the jury's rejection of his affirmative safe space defense.

Evidence

In its opinion regarding the conviction for aggravated sexual assault, the intermediate appellate court summarized the evidence as follows:

> On or about December 19, 2009, Aaron Lucas abducted seven-year-old Melinda from the playground next to an apartment building in Texarkana where she was visiting relatives. Lucas transported Melinda to a warehouse and sexually assaulted her. Melinda testified that she was frightened, screaming, and banging on the car windows and that she could not open or unlock the car door. She also testified that Lucas threatened to kill her and struck her at least twice on the lip. After assaulting her, Lucas returned Melinda to the playground area and released her near a gate to the apartment complex. Melinda said she ran to the porch, where her brother found her. She told her brother what happened, who then told their mother, and their mother contacted police.

> The State charged Lucas with three offenses in two indictment. All of the offenses charged arose from this same transaction. In the indictment under which Lucas was convicted in this case, the State charged Lucas with aggravated kidnapping. In a second indictment, the State charged Lucas with one count of aggravated assault and one count of indecency with a child. All three charges were tried together. At trial, the trial court treated the indecency with a child charge as a lesser-included offense. The jury rejected the lesser-included offense and found Lucas guilty of aggravated sexual assault of a child. The trial court then dismissed the indecency count in

response to the State's post-trial motion. The jury also found Lucas guilty of aggravated kidnapping as charged in the indictment in this case.

*Lucas v. State*, 2018 WL 1569854, at *1.

<u>Procedural Bar</u>

***Grounds for Review 1(e), 1(f), 2, 3(b) and 4***

Initially, the respondent asserts that consideration of grounds for review 1(e), 1(f), 2, 3(b), and 4 is procedurally barred.

A state prisoner must normally exhaust all available state remedies before he can apply for federal habeas relief. *See Ex parte Royall*, 117 U.S. 241, 251 (1886); 28 U.S.C. § 2254(b) and (c). To have exhausted his state remedies, a habeas petitioner must have fairly presented the substance of his claim to the state courts. *Picard v. Connor*, 404 U.S. 270, 275 (1971). The exhaustion requirement is not satisfied if the prisoner presents new legal theories or factual claims in his federal habeas petition. *Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Vela v. Estelle*, 708 F.2d 954, 958 (5th Cir. 1993).

A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default. If a state court clearly and expressly bases its dismissal of a petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for dismissal, the prisoner has procedurally defaulted his federal habeas claim. *Coleman v. Thompson*, 501 U.S. 722, 730 (1991). A procedural default also occurs when a prisoner fails to exhaust available state remedies and "the court to which the prisoner would be required to present his claims in order to meet the exhaustion requirement would find the claims procedurally barred." *Id*. at 735 n.1.

In *Ex parte Barber*, 879 S.W.2sd 889, 891 n.1 (Tex. Crim. App. 1994), the Court of Criminal Appeals announced that it would as a rule dismiss as an abuse of the writ a successive state application which raised issues that existed at the time the petitioner filed his initial state application. The United States Court of Appeals for the Fifth Circuit subsequently concluded Texas courts were regularly and strictly applying the abuse of the writ doctrine and that the doctrine could therefore be relied upon as an adequate and independent state ground forming the basis for application of the

procedural default doctrine. *Emery v. Johnson*, 139 F.3d 191, 195 (5th Cir. 1997); *Fearance v. Scott*, 56 F.3d 633, 642 (5th Cir. 1995).

A careful review of the record reveals that petitioner did not raise grounds for review 1(e), 1(f), 2, 3(b) and 4[1] in his petition for discretionary review or in his state applications for writ of habeas corpus. Petitioner has therefore not presented these ground for review to the highest state court.

As described above, the Court of Criminal Appeals would not consider additional state applications that asserted these grounds for review. As petitioner has not shown sufficient cause and prejudice for failing to present these claims to the highest state court, consideration of these claims is therefore procedurally barred.

### Ground for Review 1(d)

In ground for review 1(d), petitioner asserts there was insufficient evidence to support his convictions. While petitioner asserted this ground for review in his state applications, he did not present it on direct appeal. Texas law provides that sufficiency of the evidence claims not raised on direct appeal are procedurally defaulted. *Ex parte Grigsby*, 137 S.W.3d 637, 674 (Tex.Crim.App. 2004). As petitioner did not present this ground for review on direct appeal, and as petitioner has not shown cause and prejudice for his procedural default, consideration of this ground for review is procedurally barred. *Renz v. Scott*, 28 F.3d 431, 432 (5th Cir. 1994).

Remaining Grounds for Review

### Standard of Review

Title 28 U.S.C. § 2254 authorizes the District Court to entertain a petition for writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment if the prisoner is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a).

---

[1] In ground for review 4, petitioner asserts he received ineffective assistance of counsel on appeal. In ground for review 5 in his third set of state applications, petitioner asserted he received ineffective counsel on appeal because appellate counsel failed to communicate and meet with him. However, he did not assert appellate counsel failed to investigate a suggestive lineup and evidence of an identical twin as he asserts in the current petition. He therefore failed to present this ground for review to the highest state court.

The court may not grant relief on any claim that was adjudicated in state court proceedings unless the adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court or (2) resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court. 28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if the state court reached a conclusion opposite to a decision reached by the Supreme Court on a question of law or if the state court decided a case differently than the Supreme Court has on a materially indistinguishable set of facts. *See Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). An application of clearly established federal law is unreasonable if the state court identified the correct governing legal principle, but unreasonably applied that principle to the facts. *Id*. An unreasonable application of law differs from an incorrect application; thus, a federal habeas court may correct what it finds to be an incorrect application of law only if this application is also objectively unreasonable. *Id*. at 409-11. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citation omitted). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. The Supreme Court has noted that this standard is difficult to meet "because it was meant to be." *Id*.

This court must accept as correct any factual determinations made by the state courts unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e). The presumption of correctness applies to both implicit and explicit factual findings. *See Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004); *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001) ("The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact."). Deference to the factual findings of a state court is not dependent upon the quality of the state court's evidentiary hearing. *See Valdez*, 274 F.3d at 951.

***Trial Court Errors***

    A.  <u>Improper Granting of Continuance</u>

    Prior to trial, the trial court granted a motion seeking a continuance filed by the prosecution. Petitioner contends that granting the continuance violated the IADA. He states the purpose of the motion was to delay the trial and good cause was not shown for the continuance. Petitioner asserts that while the prosecution claimed a witness was subject to a subpoena in another court on the date the trial was originally set to start, the prosecution failed to provide any documents to support the statement. In addition, he states the prosecution failed to use diligence prior to trial to secure witnesses. Petitioner also asserts the trial court continued the trial until the next criminal setting on the court's calendar, May 1, rather than attempt to set a new date that was within the IADA's 180 day limit.

    Petitioner was incarcerated in Colorado at the time warrants were issued for his arrest based on charges of indecency with a child and aggravated kidnapping in Bowie County. Petitioner tendered his request for disposition of the Bowie County charges in October, 2016. The State of Texas acknowledged receipt of the demand on October 25, 2016.

    On December 15, 2016, a two count indictment was returned by a grand jury in Bowie County. Petitioner was charged with aggravated sexual assault of a child under 14 years of age and indecency with a child by sexual contact. On the same day, an indictment was returned charging petitioner with aggravated kidnapping. Petitioner was brought to Bowie County and made his first appearance on March 18, 2017. On March 28, 2017, the prosecution moved for a continuance, which was granted by the trial court. Trial began on May 2, 2017, which is beyond the 180 day time limit set forth in the IADA. The intermediate appellate court concluded the 180 day time limit expired on April 21, 2017.

    Petitioner raised this ground for review on direct appeal. In its opinion regarding the charge of aggravated sexual assault of a child, the intermediate appellate court stated:

> [A]t the April 3, 2017, hearing on the State's motion for continuance of the trial
> scheduled to begin on April 4, the trial court granted the continuance based on two

State-tendered reasons for the continuance: (1) the unavailability of Missy Davison, the State's expert witness and forensic interviewer, who was under a witness subpoena in Arkansas for April 4, and (2) the pending DNA retesting of biological material recovered from the victim's person, both of which were claimed to be necessary or at least in the interest of justice at trial. Nothing in this record demonstrate that those were not real, genuine reasons for demonstrating need for the continuance. While there may have been legitimate questions concerning when the State asked that the DNA evidence be retested, there was and is no claim that retesting the material, some seven years after its initial testing, using now-available, updated technology and testing protocols, was a useless exercise or a specious excuse for a continuance. The unavailable expert witness, Missy Davison, was actually called by the State and testified at length at Lucas' rescheduled May 2 trial. The situation is easily distinguished from the rejected prosecution excuse in the *Birdwell* case that the prosecution there was trying to decide whether to use a then-available witness and therefore needed a continuance. *Birdwell v. Skeen*, 983 F.3d 1332, 1340 (5th Cir. 1993). Therefore, the trial court's order continuing Lucas' trial is supported by a showing of good cause, and no abuse of discretion or clearly erroneous action by the trial court has been shown as to the good cause requirement.

The final question is whether the length of the continuance was reasonable or necessary. As a result of the continuance, the scheduled trial date of April 4 was delayed twenty-eight days, to May 2, a date that was just eight days past the IADA trial deadline of April 24. This record contains no indication that there was any earlier date available on the trial court's calendar or that setting trial just eight days beyond the April 24 trial deadline of the IADA was unreasonable or in any way harmful to Lucas. Lucas has not provided a record that shows the length of the continuance to have been unreasonable and unnecessary.

*Lucas*, 2018 WL 1569518, at *2.

The IADA is a compact between states that enables a party state to obtain custody of an out-of-state prisoner for prosecution and imposes duties to ensure a prisoner's quick return. *Hopper v. State*, 520 S.W.3d 915, 924 (Tex.Crim.App. 2017). Texas has codified the IADA in Article 51.14 of the Texas Code of Criminal Procedure. *State v. Vattta*, 299 S.W.3d 130, 134-35 (Tex.Crim.App. 2009). Article 51.14 provides that a defendant must be brought to trial within 180 of a proper request for disposition of the indictment. However, a continuance may be granted. In order to grant a continuance: (1) the court must have competent jurisdiction; (2) the continuance must be granted in open court; (3) the defendant and/or his attorney must be present; (4) the movant must demonstrate good cause in open court; and (5) the length of the continuance must be reasonable and necessary. *Birdwell*, 983 F.2d at1336.

A claim that the IADA has been violated may be raised in a petition for writ of habeas corpus filed pursuant to Section 2254, but an alleged violation requires federal habeas relief only where the alleged violation is a fundamental defect of a type that would lead to a miscarriage of justice. *Lara v. Johnson*, 141 F.3d 239, 242 (5th Cir. 1998). A habeas court should consider whether an alleged violation affected or damaged a petitioner's ability to have a fair trial and whether it created the possibility that an innocent man was convicted and imprisoned. *Id*. at 243. This defect must be an exceptional circumstance of a type which causes prejudice to the defendant. *Id*.

Petitioner contends the prosecution failed to establish good cause for the continuance. This contention is based on the argument that the prosecution did not have sufficient factual support for its motion and failed to take steps to subpoena witnesses before filing its motion. In addition, petitioner asserts the trial court improperly continued the case until a time after the 180 day limit in the IADA expired.

As described above, the intermediate appellate court considered whether the continuance was allowed under the IADA. Based on the record before it, the court concluded the continuance was not improper. Petitioner has failed to establish that this decision was contrary to, or an unreasonable application of clearly established federal law, as determined by the Supreme Court. Nor can it be concluded the decision was an unreasonable determination of the facts in light of the evidence before the state court. As a result, this ground for review is without merit.

In addition, petitioner has failed to show he suffered prejudice as a result of the continuance being granted, as is required to obtain habeas relief. The intermediate court concluded that the 180 day limit expired on April 24, 2017. The trial commenced on May 2, 2017, less than two weeks later. Petitioner does not attempt to show he suffered prejudice as a result of the short delay before his trial commenced.

B. <u>Improper Admission of Hearsay Evidence and Violation of Confrontation Clause</u>

Petitioner also contends the trial court improperly admitted testimony that was hearsay. He states that out-of-state law enforcement officers were permitted to recite unsworn declarations and

hearsay statements from witnesses from unrelated crimes in Colorado. Petitioner states this resulted in prejudice because he could not cross-examine the witnesses from the Colorado crimes. He further contends that the admission of this testimony violated the Confrontation Clause.

Four law enforcement officers from Colorado testified at trial. They testified from police reports and their memory concerning the investigation of crimes committed in Colorado. The officers also testified that petitioner pled guilty to each crime and was convicted.

Without expressing any opinion as to the merits of this ground for review, it is noted that claims of improper admission of hearsay and violations of the Confrontation Clause are subject to harmless error analysis. *United States v. Foreman*, 84 F.4th 615, 619 (5th Cir. 2023) (harmless error analysis conducted where the defendant asserted hearsay had been improperly admitted); *Atkins v. Hooper*, 979 F.3d 1035, 1049 (5th Cir. 2020) (Confrontation Clause). In order to withstand harmless error review in a federal habeas proceeding, the asserted error must have "had a substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993). The asserted error must have resulted in "actual prejudice." *Id*. at 637. There must be more than a reasonable probability that the error was harmful. *Davis v. Ayala*, 576 U.S. 257, 267-8 (2015). The *Brecht* error applies even when, as here, the state courts did not analyze the issue. *Fry v. Pliler*, 551 U.S. 112, 121-22 (2007).

A careful review of the record reveals that the evidence petitioner claims was improperly admitted did not have a substantial and injurious effect or influence in determining the jury's verdict. The evidence against petitioner was substantial. The victim selected petitioner's picture from a photographic array.[2] In addition, the victim identified petitioner at trial as the person who committed the crime.

---

[2] As discussed below, the victim identified petitioner in the fourth photographic array she was shown. However, there is no indication petitioner's picture was in the first three photographic arrays. The victim did pick out another individual from the third photo array (Dkt. #20-25 at 99). However, the victim stated at trial that the man she picked from the third photo array was not the man who harmed her.

Further, DNA evidence against petitioner was admitted at trial. Trisha Kacer, an employee in the DNA section of the Texas Department of Public Safety, testified that a sample acquired after the victim was swabbed was compared to a DNA sample from petitioner. She testified that it was 15.2 sextillion times more likely that the sample from the victim came from petitioner than from an unrelated, unknown individual (Dkt. #25-20 at 197). Ms. Kacer also stated that the DNA of an identical twin could not be distinguished from petitioner's DNA (Dkt. #20-25 at 200-01).

The evidence in petitioner's favor at trial primarily concerned his identical twin brother, Brian, under the theory that Brian committed the offense. There was evidence in the record that Brian had been convicted in Alabama of sexual abuse in the first degree (Dkt. #20-27 at 194-203). However, the court did not admit exhibits documenting these convictions. As a result, the jury was unaware of the convictions.[3]

There was testimony regarding the whereabouts of Brian on December 19, 2009, the date of the offense. Bobby Beasley, a private investigator hired by petitioner, was unable to establish Brian's whereabouts on that date (Dkt. #20-26 at 82). He did determine Brian had been in Fort Worth some time that year. *Id*. Brian was a party to a family law case in a state district court in Fort Worth. Mr. Beasley testified that court documents showed that Brian attended hearings in the case on March 4, 2009, and in April, 2010 (Dkt. #20-26 at 83). He stated the proceeding lasted from at least March, 2009, through January, 2013. *Id*. Mr. Beasley stated Brian was living in Simpsonville, South Carolina in March, 2009, and that his parents lived in Huntsville, Alabama (Dkt. #20-26 at 84). He also said the route from Huntsville to Fort Worth went through Texarkana (Dkt. #20-26 at 93). Mr. Beasley stated he attempted to contact Brian prior to trial but was unable to do so because he was in prison in Alabama (Dkt. #20-26 at 116).

---

[3] As stated below, there was testimony that a private investigator could not contact Brian prior to trial because he was imprisoned in Alabama. However, the jury was never told the nature of the conviction that led to the incarceration.

Lance Hall, an investigator with the Bowie County District Attorney's office, also testified. He stated that prior to the date of the offense, Brian was living in Simpsonville with his wife and child (Dkt. #20-26 at 132-33). Mr. Hall stated the couple was having problems and that Brian's wife flew to California around December 17, 2009, with Brian remaining in Simpsonville (Dkt. #20-26 at 133). Mr. Hall testified Brian paid his county house taxes on December 22. *Id*. He also stated he learned Brian was at work on December 18 (Dkt. #20-26 at 134).

As described above, the victim's testimony and the DNA evidence constituted strong evidence against petitioner. In contrast, evidence to support the theory that Brian rather than petitioner committed the offense was weak. While there was evidence that the DNA obtained from the victim would have matched Brian as well as petitioner, there was no evidence that Brian was in Texarkana or even in Texas in December, 2009. Instead, there was testimony he was in Simpsonville on the day before the offense and on the third day following the offense. *Id*. at 134-35. Moreover, Brian could only be placed in Forth Worth on dates nine months before and three months after the offense.

In light of the strong evidence against petitioner and the limited evidence that would support his defense, it cannot be concluded that the admission of the testimony of the four officers had a substantial and injurious effect or influence in determining the jury's verdict. There is not more than a reasonable probability the asserted error was harmful. As a result, even if it were concluded that testimony from the officers was improperly admitted, such error was harmless.

C. Improper Admission of Identification Evidence

Petitioner contends the trial court erred by admitting into evidence a photographic array that had been altered by detectives. He states the detectives claimed they used "whiteout" to cover the victim's signature for her protection and that they had an anonymous reporting party sign the document. Petitioner further complains that the lineup procedure was not recorded, the victim stated she did not sign the photo, and that it was not her handwriting. He also states the photographic array contained other suggestive marking. In addition, petitioner contends the victim picked another

11

person in a previous lineup and indicated she had thought the man who took her was someone who lived across the street from her aunt. Finally, petitioner states the lineup was conducted four years after the crime and that the original photographic array was not provided at trial.

"[A] conviction based on an eyewitness identification at trial following a pretrial identification will be set aside only if the identification procedure was so impermissibly suggestive to give rise to a substantial likelihood of misidentification." *Herrera v. Collins*, 904 F.2d 944, 946 (5th Cir. 1990) (citing *Simmons v. United States*, 390 U.S. 377, 384 (1968)). A two-step analysis applies to challenges to identification evidence. First, a court must determine whether the identification procedure was impermissibly suggestive. If so, the court must then determine whether "under the totality of the circumstances, the suggestiveness leads to a substantial likelihood or irreparable misidentification." *Herrera*, 904 F.2d at 946. The following factors are considered in determining whether an identification is reliable: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty at the time of the confrontation; and (5) the length of time between the crime and the confrontation. *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972).

For the reasons set forth below, petitioner has failed to satisfy either step of the applicable test. Lillian Tidwell, an employee of the Bowie County Juvenile Probation Department, testified that on January 22, 2013, she administered the photographic lineup where the victim identified petitioner as the man involved in the crime (Dkt. #20-25 at 11). She stated each of the six photographs was of a white male and that in five of the photographs the man was in a military uniform (Dkt. #20-25 at 12-14). The man in photograph number 2, like 5 of the 6 men, was wearing military clothes (Dkt. #20-27 at 157-61). The men in the photograph had little to no hair (Dkt. #20-25 at 12-14). Ms. Tidwell stated she laid the photographs out before the victim (Dkt. #20-25 at 15). She stated she did not give a suggestion of any kind to the victim as to which photograph she should pick and that she did not know the name of the man in the photograph the victim selected (Dkt. #20-

25 at 18-19). Ms. Tidwell testified that the victim circled the number 2 on the second photograph to indicate that was the man who harmed her (Dkt. #20-25 at 25). She stated the victim circled the number and signed her name on the photograph (Dkt. #20-25 at 25-26).

The victim testified that she did not pick anyone out of the first two photographic lineups she was shown (Dkt. #20-26 at 17). She states that before a third lineup was conducted, her cousins pointed at a man across the road from them. The victim told her cousins that he looked like the man who took her (Dkt. #20-26 at 19). While she picked that man out of a third photographic lineup, she testified at trial that he was not the man who took her. *Id*. When she was presented with a fourth lineup, she identified photograph number 2 as being the man who took her and circled the number on the photograph (Dkt. #20-26 at 20-21). The victim stated she circled the number on the photograph. *Id*. She testified the handwriting on the photograph she was shown in court was not her handwriting (Dkt. #20-26 at 23). At trial, the victim identified petitioner as the person who harmed her (Dkt. #20-26 at 21).

Latreshia Grandy, a detective with the Texarkana Police Department, testified that after the victim signed her name indicating she had selected the second photograph, she (Detective Grandy) realized that the photograph and signature would be placed in the file, making it subject to a request under the Freedom of Information Act (Dkt. #20-25 at 150-55). Detective Grandy stated white out was used to remove the signature of the victim, who she described as the reporting party, from the photograph (Dkt. #20-25 at 151). The victim then placed her initials on the photograph. *Id*. The photograph introduced into evidence at trial had the initials MG written on it, representing the pseudonym given to the victim (Dkt. #20-27 at 158). Detective Grandy testified that petitioner was the person identified in photograph number 2.

Detective Grandy further testified that in a prior photographic lineup, the victim identified a man named Kenneth Crowley, saying she had seen him before (Dkt. #20-25 at 153). She interviewed Mr. Crowley and determined he was paralyzed at the time of the crime. *Id*. The

detective also testified that while the victim stated the man who took her had a rose tattoo and a heart tattoo, petitioner did not have either type of tattoo (Dkt. #20-25 at 169).

The record does not show that the procedure used to obtain the victim's pretrial identification of petitioner was impermissibly suggestive. Ms. Tidwell testified she presented the victim with six photographs, all of which showed white males with little to no hair. She stated she did not give a suggestion of any kind to the victim as to which picture she should choose. Moreover, she did not know the name of the man in the photograph the victim chose. This testimony is uncontradicted. Petitioner correctly states there is a mark– a line–under the victim's initial on the photograph she chose. However, the victim did not state she was affected by any mark on the photograph and there is no evidence as to whether the mark was made before or after the identification was made. As a result, it cannot be concluded the pretrial identification method was impermissibly suggestive.

In light of this conclusion, it is not necessary to weigh the factors described in *Biggers* to determine whether the suggestiveness of the procedure led to a substantial likelihood of irreparable misidentification. However, an analysis of the *Biggers* factors weighs in favor of a finding that the pretrial identification was reliable.

With respect to the first two factors, the victim had a reasonable opportunity to see petitioner at the time of the crime and there is no indication she was not paying attention to the person who took her. While the victim stated petitioner initially placed her in the backseat of the car he was driving, he subsequently got out of the car, opened the rear door and took her pants off (Dkt. #20-26 at 13-14).

The accuracy of the victim's initial description of the criminal weighs against a finding that the pretrial identification was reliable. The victim originally described the person who abducted her as an older male with gray hair and facial hair (Dkt. #20-25 at 29). There is no evidence petitioner fit this description at the time of the offense. In addition, the victim said the offender has a rose tattoo and a heart tattoo, which petitioner does not have. Regarding the fourth factor, the testimony of Ms. Tidwell gives no indication the victim's identification of petitioner during the fourth

photographic lineup was anything less than certain.  More than three years passed between the offense and the pretrial identification.  This would appear to weigh against the reliability of the identification.

Three of the five *Biggers* factors weigh in favor of the conclusion that the pretrial identification of petitioner was reliable.[4]  In light of this, and the conclusion that the pretrial idenfication procedure was not impermissibly suggestive, the rejection of this ground for review by the state courts was not contrary to, or an unreasonable application of, clearly established federal law.

### *Ineffective Assistance of Counsel*

A. Legal Standard

In addressing the issue of what a petitioner must prove to demonstrate an ineffective assistance of counsel claim, courts look to the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  *See United States v. Grammas*, 376 F.3d 433, 436 (5th Cir. 2004).  In order to show that counsel was ineffective a petitioner must demonstrate:

> First . . . that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings it cannot be said that the conviction . . . resulted in a breakdown of the adversarial process that renders the result unreliable.

*Strickland*, 466 U.S. at 687.  In order to prove the prejudice prong, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009).  "*Strickland*

---

[4] Petitioner does point to a curiosity. Detective Grandy indicated that after the victim's signature was removed from the photograph using white out, the victim wrote her initials on the photograph.  At trial the victim stated she did not recognize the handwriting of the initials.  However, this does not call into question the testimony that at the time of the fourth photograph lineup, the victim chose petitioner's picture, circled the number on the photograph, and signed the photograph.

asks whether it is 'reasonably likely' the result would have been different." *Harrington v. Richter*, 562 U.S. at 111.

A habeas petitioner must "affirmatively prove," not just allege, prejudice. *Day*, 556 F.3d at 536. If a petitioner fails to prove the prejudice part of the test, the court need not address the question of counsel's performance. *Id*. A reviewing court "must strongly presume that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy." *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). In determining the merits of an alleged Sixth Amendment violation, a court "must be highly deferential" to counsel's conduct. *Strickland*, 466 U.S. at 687.

Whether the representation was deficient is determined as measured against an objective standard of reasonableness. *Kitchens v. Johnson*, 190 F.3d 698, 701 (5th Cir. 1999). "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002) (quoting *Garland v. Maggio*, 717 F.2d 119, 2006 (5th Cir. 1983)). "There is a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Woodward v. Epps*, 580 F.3d 318, 329 (5th Cir. 2009) (quoting *Romero v. Lynaugh*, 884 F.3d 871, 876 (5th Cir. 1989)).

Analysis of an ineffective assistance claim on federal habeas review of a state court conviction is not the same as adjudicating a similar claim on direct appeal of a federal conviction. *Harrington*, 562 U.S. at 101. The key question on federal habeas review is not whether counsel's performance fell below the *Strickland* standard, but whether the state court's application of *Strickland* was unreasonable. *Id*. The deferential standard applicable to federal habeas review requires federal courts to apply a "doubly deferential" standard of review to claims of ineffective assistance, under which both the conclusions of the state court and strategic decisions of defense counsel are given the benefit of the doubt. *Burt v. Titlow*, 571 U.S. 12, 15 (2013).

B.  <u>Application</u>

Petitioner states his trial counsel was ineffective because he failed to call exculpatory witnesses who could have verified his alibi.  He states his wife and military personnel would have verified that he was training in Virginia at the time of the crime.

Complaints of uncalled witnesses are not favored in federal habeas review because the presentation of witnesses is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative.  *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009). To prevail on an ineffective assistance of counsel claim based on counsel's failure to call a witness, a petitioner must identify the witness, demonstrate that the witness was available to testify and would have done so, set out the contents of the witness's proposed testimony, and show the testimony would have been favorable to a particular defense.  *Id*.  The requirements of showing availability and willingness to testify "[are] not a matter of formalism."  *Woodcox v. Cain*, 609 F.3d 774, 808 (5th Cir. 2010).

Petitioner has not satisfied this standard.  He has failed to demonstrate his wife was available to testify at trial and would have done so.  Moreover, he has only his unsupported assertion to demonstrate she would have testified on behalf of his alibi.  An affidavit from petitioner's wife is not part of the record.  In addition, petitioner has failed to provide the name of any additional witnesses counsel should have called to testify or shown that any of these witnesses were available to testify.  As petitioner has failed to satisfy the requirements set forth in *Day*, this ground for review is without merit.

***Insufficient Evidence for Rejection of Affirmative Defense***

During the punishment phase of the trial, petitioner asserted the affirmative defense of releasing the victim in a safe space.  He states that based on the evidence presented, the jury should not have rejected this defense.  Petitioner contends the evidence showed that victim was dropped

17

off at the apartment complex where she was taken. He states no one testified with specificity as to why that particular area was more dangerous than any other part of town.

A jury's findings regarding an affirmative defense must be upheld so long as the evidence is such that no reasonable trier of fact could have failed to conclude the defendant was entitled to the affirmative defense. *United States v. Abou-Kassem*, 78 F.3d 161, 166 (5th Cir. 1996).

Under Section 20.04 of the Texas Penal Code, aggravated kidnapping is a first-degree felony unless, at the punishment stage of the trial, the defendant proves by a preponderance of the evidence that the victim was released in a safe place. If a defendant satisfies this burden, the offense becomes a second-degree felony.

Petitioner raised this ground for review on direct appeal. In its opinion regarding petitioner's conviction for aggravated sexual assault, the court stated:

> Whether a location is a safe place under Section 20.04(d) is determined on a case-by-case basis, considering the totality of the circumstances. In *Butcher v. State*, the Corpus Christi Court of Appeals considered this issue in a similar case. *Butcher v. State*, No. 11-11-00288-CR, 2013 WL 5891603 (Tex.App.-Corpus Christi Oct. 13, 2013), *aff'd* 454 S.W.3d at 13. In that case, Butcher kidnapped a nine-year-old child from a driveway at her condominium complex as she walked to her school bus stop. *Id*. at *1. Later that day, Butcher returned the girl to the same area and released her. *Id*. On appeal, he argued that he had released the victim in a safe place and was entitled to an affirmative finding on the Section 20.04(d) defense. *Id*. at *7.

> In reviewing the jury's verdict, the Corpus Christi court relied on seven factors which are useful in making this determination: "(1) the remoteness of the location, (2) the proximity of help, (3) the time of day, (4) the climate, (5) the condition of the complainant, (6) the character of the location and surrounding neighborhood, and (7) the complainant's familiarity with the location of the neighborhood." *Butcher*, 454 S.W.3d at 19. The Texas Court of Criminal Appeals granted discretionary review and affirmed the Corpus Christi court. *Id*. at 20. The Court of Criminal Appeals approved of the factors relied upon by the court of appeals, but "caution[ed] reviewing courts that the factors . . . are merely nonexclusive aids that may be considered to guide its determination under the totality of the circumstances of each case whether the place at which the complainant was released was "safe." *Id*. at 19 (footnote omitted). The Court of Criminal Appeals concluded,

> > Because we hold that the determination of a "safe place" should be made considering the unique facts of each case, factors other than the seven identified by the court of appeals may also be considered when reviewing a determination of whether a place is "safe" for purposes of Section 20.04(d) of the Texas Penal Code. For example the court of appeals in this case determined that the age of the complainant was significant. In another case, other factors may be important such as

> the competency of the complainant or whether the complainant had
> a physical disability.

*Id*. n.10.

In holding that the evidence was both legally and factually sufficient to support the jury's implicit rejection of Butcher's affirmative defense, the Court of Criminal Appeals noted that

> the fact that Appellant released the complainant during the day is not dispositive of whether a place is "safe"; many places that are dangerous at night remain dangerous during the light of the day. In addition, other relevant facts in this case included that the complainant was a nine-year-old girl; she had lived at the condominium complex for only three months; Appellant released JG without her mobile phone, thus preventing her from seeking immediate help; and after being released JG returned home to an empty home and had to leave it--after being kidnapped near her home at knife point--to seek help . . . . Finally, although JG testified that she went to the home of a neighbor whom she knew and was comfortable with, she also did not ask for the neighbor's help despite their familiarity. Instead, she asked to use the phone to call her mother. Thus, while it was possible to infer that JG may have felt safe once she came upon the mailman because she did not ask for help, it is equally possible to infer that JG did not want to ask a stranger, or even a neighbor she was comfortable with, for help after being kidnapped by a stranger that morning so near her home. Moreover, a fact[-]finder could infer that even an independent nine-year-old girl would be afraid to ask a passerby for help after suffering severe trauma by being kidnapped, having a knife held to her throat, and held, bound for eight hours against her will.

*Id*.

Similar evidence was presented in this case which supports the jury's rejection of Lucas' safe place affirmative defense. For example, two law enforcement witnesses testified that the area was not safe for an unattended seven-year-old and that the area was the site of frequent criminal events, including violent crimes such as shootings and assaults. One witness described the area as a "high crime neighborhood." Additionally Melinda testified that Lucas threatened to kill Melinda if she did not stop screaming and that he hit her in the mouth twice. This evidence, together with the fact that Lucas sexually assaulted her, supports a reasonable inference that Melinda was afraid and probably traumatized.

While there is little specific evidence regarding some of the seven factors delineated in *Butcher*, our review is not constrained by those factors. The jury was entitled to assess the credibility of the witnesses and, based on the evidence presented, to disbelieve Lucas' asserted defense. Considering the totality of the circumstances, we cannot say Lucas established, as a matter of law, that he released Melinda in a safe place.

19

We also find, considering all the evidence in a neutral light, that the jury's rejection of the affirmative defense was supported by factually sufficient evidence. Even "the fact that some facts in the record *could* support [Lucas'] affirmative defense does not render the factual sufficiency of the jury's decision manifestly unjust, conscience-shocking or clearly biased." *Id*. at 20. Moreover, this Court may not subvert the jury's conclusion even if "we may have reached a different result under the same facts." *Id*. As summarized above, even though Melinda was released in essentially the same area as that from which she had been abducted, that area had a history of violent criminal episodes. There was no suggestion that any adults were present upon her release. She had just been raped, threatened, and assaulted. A rational jury could easily have rejected Lucas' claim of releasing the young girl in a safe place.

*Lucas*, 2018 WL 1569854, at *2-4.

As the intermediate appellate court stated, there was evidence to support a finding in petitioner's defense. However, the applicable law and the evidence described in the opinion prevent the conclusion that no rational trier of fact could have concluded petitioner failed to establish his affirmative defense. As a result, the conclusion reached by state courts with respect to this ground for review was not contrary to, and did not involve an unreasonable application of, clearly established federal law. Nor did the conclusion constitute an unreasonable determination of the facts in light of the evidence presented in state court.

<u>Recommendation</u>

This petition for writ of habeas corpus should be denied.[5]

---

[5]    In light of the conclusions reached above, the respondent's assertion that the petition is barred by the applicable statute of limitations need not be considered.

<u>Objections</u>

Objections must be (1) specific, (2) in writing, and (3) served and filed within 14 days after being served with a copy of this report.  28 U.S.C. § 636(b)(1).

Failure to file objections bars a party from (1) entitlement to *de novo* review by a district judge of proposed findings and recommendations, *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of unobjected-to factual findings and legal conclusions accepted by the district court, *Douglass v. United Serv. Auto. Ass'n.*, 79 F.3d 1415, 1429 (5th Cir. 1996) (*en banc*).

SIGNED this the 5th day of February, 2024.

_____
J. Boone Baxter
UNITED STATES MAGISTRATE JUDGE